[J-5-2022] [MO: Wecht, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| IN RE: APPEAL OF THE APRIL 24, 2018 DECISION OF THE CHARLESTOWN TOWNSHIP ZONING HEARING BOARD DENYING THE CHALLENGE OF CHARLESTOWN OUTDOOR, LLC TO THE VALIDITY OF THE ZONING ORDINANCE'S EXCLUSION OF OUTDOOR ADVERTISING BILLBOARDS<br><br>APPEAL OF: CHARLESTOWN OUTDOOR, LLC | : No. 80 MAP 2021<br>:<br>: Appeal from the Order of<br>: Commonwealth Court at No. 826 CD<br>: 2019 dated January 21, 2021,<br>: reconsideration denied March 15,<br>: 2021, Affirming the Order of the<br>: Chester County Court of Common<br>: Pleas, Civil Division, at No. 2018-<br>: 05282-ZB dated June 13, 2019.<br>:<br>:<br>: ARGUED: March 8, 2022 |

**DISSENTING OPINION**

**JUSTICE MUNDY**                    **DECIDED: August 16, 2022**

In 2004, Charlestown Township ("Township"), a municipality in Chester County, passed an ordinance ("the Ordinance") that permitted billboards within the B-1 zoning district subject to a set-back requirement of not less than five feet nor more than thirty feet from the edge of the Pennsylvania Turnpike ("Turnpike"). Subsequent to the enactment of the Ordinance, the Pennsylvania Department of Transportation ("PennDOT") constructed a Turnpike interchange in the Township. A PennDOT regulation bars the erection of billboards within five hundred feet of an interchange. The combined set-back restrictions of the Ordinance and the PennDOT regulation resulted in the effective exclusion of billboards from the entirety of the Township. Despite this effective exclusion, the Majority holds that the Ordinance is not exclusionary because it finds that it is not the Ordinance, but rather the PennDOT regulation, that precludes the erection of billboards. In so finding, the Majority holds that a *de facto* exclusionary

challenge must be decided solely by reference to the restrictions imposed by the language of the challenged zoning ordinance. Maj. Op. at 18. I cannot agree and, therefore, dissent.

"This Court has repeatedly recognized that '[p]roperty owners have a constitutionally protected right to enjoy their property[.]'" *Township of Exeter v. Zoning Hearing Bd. Of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009) (quoting *In re: Realen Valley Forge Greenes Associates*, 838 A.2d 718, 727 (Pa. 2003)). We have also recognized that this constitutionally protected right "may be reasonably limited by zoning ordinances that are enacted by municipalities pursuant to their police power, *i.e.*, governmental actions taken to protect or preserve the public health, safety, morality, and welfare." *Id.* (quoting *In re: Realen Valley*, 838 A.2d at 727). While municipalities can exercise their police power to reasonably limit property owners' constitutionally protected rights, a zoning ordinance that excludes a legitimate use of land may be found unconstitutionally exclusionary. Billboards have consistently been recognized as a legitimate business use, and as such cannot be excluded from the entirety of a municipality without justification. *See e.g. Exeter*, 962 A.2d at 660 ("[S]ince billboards are not objectionable *per se*, a blanket prohibition on billboards without justification cannot pass constitutional muster." (footnote omitted)); *Norate Corp. v Zoning Board of Adjustments of Upper Moreland*, 207 A.2d 890, 896 (Pa. 1965).

Challenges asserting a zoning ordinance is unconstitutionally exclusionary fall into one of two categories. An ordinance that, by its explicit terms, excludes a particular use is considered *de jure* exclusionary. On the other hand, an ordinance is deemed *de facto* exclusionary when it appears on its face to permit a use, but subject to such conditions that the use cannot be accomplished. *Exeter,* 962 A.2d at 657. The Ordinance here facially permits billboards in the B-1 zoning district while excluding them from other zoning

districts within the Township. As such this case involves a *de facto* exclusionary challenge. While on its face the Ordinance permits the erection of billboards in the B-1 district, after construction of the interchange, the PennDOT regulation effectively bars the placement of billboards in the district.[1] The ultimate result is that billboards, a legitimate business use, are completely excluded from the entire Township. Thus, the Ordinance is *de facto* exclusionary.

---

[1] The Majority contends that "it is not the zoning ordinance, but rather the statewide regulation, that precludes" billboards in the B-1 zoning district. Maj. Op. at 2. However, it is not solely the Ordinance that bars the erection of billboards. Rather, it is the combination of the setback requirements in the Ordinance and the PennDOT regulation that result in the inability to place billboards in the B-1 zoning district. Before the Zoning Hearing Board, the Township's Planning Expert testified that a portion of the B-1 district lay situated outside of the five-hundred-foot radius of the interchange subject to PennDOT regulation but also outside the thirty-foot setback required in the Ordinance. N.T., 1/29/17, at 24-25, 41-42. Consequently, but for the Ordinance's set back restrictions, a billboard could be placed in the B-1 district without running afoul of the PennDOT regulation. The Ordinance and the PennDOT regulation together effectively exclude billboards from the B-1 district and, by extension, the Township as a whole. The Majority dismisses this combined effect of the Ordinance and the PennDOT regulation out of hand because, in its view, "[o]ur precedent resolves exclusionary zoning challenges by examining the terms of the challenged zoning ordinance itself, not the combined effect of overlapping state-wide regulations." *Id.* at 18 n.50. But this Court has never directly addressed the question of what role "overlapping state-wide regulations" play when considering a *de facto* exclusionary challenge.

The Majority ignores this reality and instead focusses solely on the explicit language of the Ordinance. Maj. Op. at 18. In the Majority's view "[w]hen a prohibition or impossibility arises by virtue of something other than the ordinance, it cannot be said that the ordinance is the cause of that impossibility or, consequently, that it is exclusionary." *Id.* Unlike *de jure* exclusionary challenges, however, a *de facto* exclusionary challenge is not focused on the language of the challenged ordinance. Rather, a *de facto* challenge is focused on the effect of the application of the ordinance. In considering such a challenge, courts should look beyond the language of the ordinance and determine if a legitimate property use is effectively barred from the jurisdiction. In these situations, it is imperative to consider the interplay between the challenged ordinance and any other governmental regulations that restrict how property owners may exercise their property rights. Otherwise, municipalities may fashion their zoning ordinances in a manner which combines with other governmental regulations to achieve a result the municipalities could not constitutionally achieve on their own, *i.e.*, the complete exclusion of legitimate uses from their jurisdictions.

The Majority observes that the PennDOT regulation that combines with the Ordinance in the case *sub judice* became applicable in the Township after the Township enacted the Ordinance. It further recognizes that this case does not involve "a situation where a municipality zoned for a particular use in a district subject to statewide regulations that already precluded that use." *Id.* at 18 n.20. Nevertheless, the respective timing of the enactment of the regulation and ordinance does not impact the language of the ordinance, which is the only consideration the Majority finds relevant. If PennDOT constructed the interchange in the Township prior to the Township's enactment of the Ordinance the regulation would still bar the placement of billboards within five hundred feet of the interchange and the Ordinance would still only permit billboards in the B-1

district. Under the Majority's analysis the prohibition on billboards would still arise "by virtue of something other than the ordinance[.]" *Id.* at 18. The Majority's holding sets the stage for municipalities in the Commonwealth to manipulate the zoning process to exclude unpopular property uses from their jurisdictions by relying on preexisting regulations. This will have an impact beyond commercial property uses such as billboards and may restrict uses such as low-income housing or drug and alcohol treatment facilities.

I respectfully dissent.